# CHARLESTON.

CHARLES H. BEALL *et al.* v. COUNTY COURT OF BROOKE COUNTY *et al.*

(No. 5985)

Submitted May 17, 1927.    Decided June 7, 1927.

COUNTIES—*Owning Property Adjoining Proposed Jail and Court-house Site Does Not Disqualify County Court Member From Voting to Purchase Land; Regardless of Statute (Code, c. 39, § 8-b).*

Where the county court proposes to buy land for the erection of a courthouse and jail, the fact that one of the members owns property adjoining the proposed site will not disqualify him from voting in favor of such purchase on the ground of interest, where it is not shown that the erection of the building will increase the value, or necessitate the purchase of, his property.

(Counties, 15 C. J. § 113 [Anno].)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi).

Appeal from Circuit Court, Brooke County.

Suit by Charles H. Beall and others, citizens and taxpayers of Brooke County, against the County Court of Brooke County and others, for an injunction. From a decree for plaintiffs, defendants appeal.

*Reversed; bill dismissed.*

*James R. Wilkin, Pros. Atty.,* and *R. L. Ramsay,* and *Harold A. Ritz,* for appellants.

*John C. Palmer, Jr.,* and *John P. Arbenz,* for appellees.

LITZ, JUDGE:

Realizing the inadequacy, for public purposes, of the courthouse and jail of Brooke County, at the suggestion of members of the county court, Judge Sommerville, of the First Judicial Circuit, composed of Ohio, Brooke and Hancock counties, in January, 1925, appointed twenty-four representative business men of the county as a committee to investigate and report such measures as in their opinion should be taken to remedy the situation. The members of the committee, which seems to have represented about four-fifths of the property ownership of the county, after a careful survey of the situation, recommended the purchase of a new site for the erection of a courthouse and jail, comprising a block in the town of Wellsburgh abutting Main Street, Fifteenth Street, and Charles Street, a portion of which (60 feet by 105.5 feet) was owned by Frank Wade, a member of the county court. Thereafter, June 19, 1926, Frank Wade, as a member of the county court, moved the purchase of the property as recommended by the committee, "and at the present time to purchase the Carmichael property fronting 154 feet on Main Street and 147 feet on Charles Street, also to purchase the Loggie properties fronting 105 feet on Main Street and bounded on the north by property of Windsor H. Kirker, on the east by an eleven-foot alley, and by Charles Street, and on the south by the Carmichael property, the said Loggie property fronting 105 feet on Main Street and 30 feet on Charles Street, the purchase price of these properties to be as follows: For the Carmichael property, $19,500.00; for

the Loggie property, $12,000.00. Approved, A. L. Carter and Frank Wade voting Yes, and W. W. Pilchard voting No.''

The motion as to the purchase of the Carmichael and Loggie properties was carried by the vote of Wade and A. L. Carter, another member of the court, but before execution and delivery of the deeds conveying the properties and payment of the purchase price, the plaintiffs, Charles H. Beall, Thomas J. Reid, and John Ralston, citizens and taxpayers of the county, instituted this suit against the County Court, the individual members thereof, and others, for the purpose, among other relief, of obtaining an injunction enjoining the defendants, ''their associates, agents, servants and employees,'' from taking any further action in the sale or purchase of said property for county purposes.

The bill charges a gigantic conspiracy on the part of the defendants and others, including, by inuendo at least, the members of the committee, to purchase the property recommended by it, in order that the defendant, Frank Wade, might thereby effect the sale of his property.

Judge BRENNEN, who heard the case, in a written opinion found that there was no evidence of the alleged conspiracy, and that the parties acted in the utmost good faith; but enjoined the purchase by the county court of the Carmichael and Loggie lands upon the theory that the purchase of these properties would necessitate the purchase also of Wade's lot.

We concur in the finding of the circuit court that there is no evidence of fraud; but do not agree with the conclusion that the purchase of the Carmichael and Loggie properties will necessitate acquisition by the county of the Wade lot, and that, for this reason, he is interested in the sale to the county of the Carmichael and Loggie properties to such an extent as to disqualify his vote, which is required to authorize the purchase. The evidence shows that it will not be necessary to acquire the Wade lot, nor is there any proof that building the courthouse and jail on the adjoining property will increase the value of this lot.

There is, therefore, in our opinion, no foundation for the claim or theory that Wade is personally interested in the pur-

chase by the county court of the Carmichael and Loggie lands, in contemplation of Section 8-b, Chapter 39, Code, providing:

> "* * * And it shall be unlawful for any member of the county court, or other tribunal established in lieu thereof, to be directly or indirectly interested in any contract for furnishing supplies for the poor, or in any contract, for any purpose whatever, in which the county shall be in any way interested."

The decree of the circuit court is reversed and the bill dismissed.

*Reversed; bill dismissed.*